ERVIN, Judge.
In this workers’ compensation action, the appellants contend that the deputy commissioner erroneously determined that the claimant, an inmate at Tampa Correctional Center, was an “employee” within the ambit of Section 440.02, Florida Statutes (1979). We agree and reverse.
The Department of Corrections (DOC) and the Department of Health and Rehabilitative Services (HRS) entered into an agreement whereby five inmates from the correctional institution[1] were regularly assigned to work on the grounds of the W. T. *29 Edwards Building (a facility of HRS which was located near the center), and were to be paid a stipend of $20 per month. The exact fiscal arrangements as to how the money was to be disbursed are not entirely clear from the record. Apparently, the source of funds were from HRS’s other personal service (OPS) funds. These funds were paid by the HRS to the DOC. The DOC in turn credited the accounts of the inmates. The record does not establish whether the proceeds passed through the DOC’s Correctional Work Program Trust Fund.
Although not one of the five inmates involved in the original HRS-DOC agreement, the claimant was later added to the work force, and on July 18,1979, suffered a work-related injury while on the premises of W. T. Edwards. At the tim^ of injury, claimant was classified on “permanent party” status as opposed to a “work-release” status. Basically, the difference between the two is that “a permanent party” prisoner is either not compensated for his labor, or, at the most, is paid a $20-per month stipend by the DOC. A work-release prisoner, on the other hand, is able to earn regular wages at outside employment from a private employer.
Although the claimant’s work at W. T. Edwards was directly supervised by HRS employees, his assignment to perform such work was made by the chief correctional counselor at the prison. Moreover, while he was carrying out his responsibilities at the hospital, he was nonetheless subject to all the “permanent party” procedures of the prison.
The deputy commissioner found that the claimant’s status as a prisoner did not bar his claim for benefits under the workers’ compensation law; that his claim was not barred by the provisions of Section 944.49, because that statute is limited to prisoners engaged in work “under the jurisdiction of the department”, and to compensation paid from the Correctional Work Program Trust Fund; that the claimant was supervised by the staff at W. T. Edwards, and was therefore employed by HRS, making his injury compensable.
The record supports the deputy’s finding that claimant was, at the time of his injury, directly supervised by HRS employees; nevertheless, such finding does not divest DOC’s jurisdiction over the claimant’s work-related activities. Section 945.-11 authorizes the DOC to enter into agreements with other state agencies in order that such agencies “might, under supervision of employees of the [Department [of Corrections], use the services of inmates ... when it is determined by the [Department [of Corrections] that such services will not be detrimental to the welfare of such inmates or the interests of the state in a program of rehabilitation.” (e. s.) A cursory reading of Section 945.11 reveals the legislative intent that inmates shall remain under supervision of the DOC even while “on loan” to another agency. The record establishes that the employees of the DOC at the Tampa Correctional Center maintained overall administrative supervision over its inmates. We feel that such supervision meets the requirements of Section 945.11. We thus reject the contention advanced by the ap-pellee that Section 945.11 is not applicable because no DOC employee directly supervised O’Neal’s work at W. T. Edwards.
The conclusion that DOC maintained jurisdiction over the inmate even while he was performing work for another state agency is further strengthened by reading in pari materia Sections 944.49(2)(a) and 945.11. The former statute provides:
Each prisoner who is engaged in productive work in any state correctional institution, program, or facility under the jurisdiction of the department may receive for work performed such compensation as the department shall determine .... (e. s.)
The word “program” in Section 944.49(2)(a) is amplified by the words “program of rehabilitation” in Section 945.11, and together show that DOC retained jurisdiction over a rehabilitative program in which the inmate participated.
The appellee further argues that because the language of Section 944.49(3) requires that inmates shall be compensated for their *30 work from the Correctional Work Program Trust Fund, and because the claimant was not compensated from that fund, the exclusion denying workers’ compensation benefits provided in Section 944.49(5)[2] is not applicable. We are unable to determine from this record whether HRS’s OPS funds, which were ultimately credited to the claimant’s account, were deposited into, and then disbursed from the fund. Nevertheless, the DOC was entitled to reimbursement from HRS for the claimant’s services pursuant to Section 945.11(2). DOC may not have followed the correct accounting procedure in disbursing funds to the claimant, but the same economic result would have occurred had the appropriate procedure been followed. We can see no reason why the omission of one step in the accounting process would now trigger the claimant’s right to workers’ compensation benefits, which would have otherwise been barred by Section 944.49(5).
We reject the appellee’s contention that the presumption of compensability provided in Section 440.26(1) applies to the instant case. We approve the reasoning of the Industrial Relations Commission in Metropolitan Dade County v. Sikes, IRC Order 2-3169 (May 27,1977), which upheld a JIC’s order denying a county prisoner’s claim. The prisoner had functioned as a gardener in a city park as part of a nursery training program funded by a federal grant at the time he was injured. Although the IRC noted that Section 944.49(5) did not specifically apply to the claimant in the case before it since he was a county prisoner, it observed that the legislature had expressed a clear policy statement that a prisoner should not receive workers’ compensation benefits. We follow the dicta in Sikes here since the appellee was a state “permanent party” prisoner working, albeit voluntarily, pursuant to an agreement between the DOC and HRS.
We are not unmindful of our recent opinion in University of Florida, Institute of Agricultural Services v. Karch, 393 So.2d 621, 622 (Fla. 1st DCA 1981), in which we stated that the Workers’ Compensation Act “applies to all employment unless specifically excluded.” Karch should not be interpreted as requiring a specific exclusion to be contained within the confines of Chapter 440. An exclusion has been created by the enactment of Section 944.49(5), which explicitly refers to the Workers’ Compensation Act. Although the legislature could have expressed its intent more clearly by a cross-reference to Section 944.49(5) in Chapter 440, the two statutes, nonetheless, should be read in pari materia. Cf. American Bakeries Co. v. Haines City, 131 Fla. 790, 180 So. 524 (Fla.1938).
REVERSED.
BOOTH and JOANOS, JJ., concur.

. The institution is a minimum security facility whose inmates are expected to work under minimum supervision.

. Section 944.49(5) provides that “[n]o prisoner compensated under this section shall be considered an employee of the state or the department, nor shall such prisoner come within any other provision of the Workers’ Compensation Act.”