435 So.2d 887 (1983)
Ivia Jean NEWSOME, Appellant,
v.
DEPARTMENT OF CORRECTIONS of the STATE OF FLORIDA, Appellees.
No. AO-320.
District Court of Appeal of Florida, First District.
July 13, 1983.
Rehearing Denied August 16, 1983.
Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, Miami, and Wagner, Cunningham, Vaughan & McLaughlin, Tampa, for appellant.
Jim Smith, Atty. Gen., and Pamela L. Shields, Asst. Atty. Gen., for appellees.
NIMMONS, Judge.
Appellant Newsome was raped and battered by one Eddie Dixon, a 17-year-old Florida Department of Corrections (DOC) inmate who, shortly before, had left a Florida Department of Transportation (DOT) work crew without permission during the lunch hour on September 11, 1980. Newsome filed suit for damages against DOC and DOT for negligence in the supervision and control of Dixon. The trial court granted DOC's motion for summary judgment on the grounds of sovereign immunity. DOT did not raise sovereign immunity in the trial court and Newsome's cause of action against DOT is, therefore, not a subject of this appeal. For the reasons stated herein, we reverse the trial court's order granting summary judgment in favor of DOC.
*888 In 1979, Dixon committed two armed robberies in Polk County and was sentenced in each case concurrently as a Chapter 958 youthful offender to the custody of DOC for a term of five years, two years of which were to be by imprisonment followed by three years in a community control program.[1] Dixon had not yet completed the imprisonment portion of the sentences.
After his placement in the Hillsborough Correctional Institution, a DOC correctional facility which housed medium and minimum custody youthful offenders, Dixon assaulted fellow inmates on two occasions, used abusive language towards correctional officers, and was involved in other prison rule violations.
Because of a perceived improvement in Dixon's institutional conduct, he was reclassified by DOC in September, 1980, from medium to minimum risk pursuant to recommendation by a DOC classification team. He was then assigned to a DOT work detail pursuant to Section 945.11(1), Florida Statutes (1979), which provides:
The department [of corrections] is authorized to enter into agreements with such political subdivisions of the state, as defined by s. 1.01(9), and with such agencies and institutions of the state as might, under supervision of employees of the department [of corrections], use the services of inmates of correctional institutions and camps when it is determined by the department [of corrections] that such services will not be detrimental to the welfare of such inmates or the interests of the state in a program of rehabilitation.
In June, 1980, DOC entered into an agreement with DOT providing for DOT's utilization of DOC prisoners to perform work tasks for DOT. Essentially, the agreement provided for the transportation by DOT of the inmates each day from DOC facilities to the DOT work center and the return of the inmates by DOT at the end of the workday. The agreement provided for DOT personnel to provide supervision of inmates while in custody of DOT and to "maintain specified custody and control of inmate work crews during all break and meal periods."
It is undisputed that on the day in question the DOC inmates assigned to the DOT work detail, including Dixon, were in the custody of DOT personnel and that no DOC correctional officers or personnel were assigned to supervise the inmates while participating in the DOT work details. DOC contends, therefore, that it was not responsible for the alleged negligent supervision by DOT personnel of the inmates assigned for the day to the DOT work detail. We disagree.
Section 945.11 is a clear legislative mandate that DOC is responsible for the supervision of inmates assigned to DOT work details such as this.[2] To the extent that DOC relies upon DOT or other agencies to carry out its statutory responsibility of providing adequate supervision of its inmates while on Section 945.11 work details, it does so at its peril. Regardless of whether DOC's reclassification of Dixon from medium to minimum security may properly be regarded as a "discretionary" decision under Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), and its recent progeny, DOC is not entitled to the shield of sovereign immunity in carrying out its statutory operational duty of supervising such inmates whether through its own employees or those of any other agency *889 to whom it purports to delegate such responsibility.
We, therefore, reverse the trial court's order granting summary judgment in favor of DOC and remand for further proceedings consistent with this opinion.
Reversed and remanded.
LARRY G. SMITH and JOANOS, JJ., concur.
NOTES
[1] Notwithstanding the sentence's provision for a three-year period of community control, we note that the statutory maximum period for the community control portion of a youthful offender sentence is two years. See Sections 958.05(2) and 958.10(1), Florida Statutes (1979). However, that is not in issue here.
[2] We are mindful of the holding of this Court in State Dept. of Health v. O'Neal, 400 So.2d 28 (Fla. 1st DCA 1981), a worker's compensation case in which we held § 945.11 was not a legislative mandate that DOC employees "directly supervise" the inmates while at the work detail. However, we also recognized that:

"A cursory reading of Section 945.11 reveals the legislative intent that inmates shall remain under supervision of the DOC even while `on loan' to another agency." [400 So.2d at 29]