**Carol PURVIS, as personal representative of the Estate of Thomas J. Logan, Jr., Plaintiff,**

**v.**

**CITY OF ORLANDO, a municipal corporation and political subdivision of the State of Florida, Kevin Beary, in his official capacity as Sheriff of Orange County, Florida, and Officer Wendell Reeve, individually and as an agent and employee of the City of Orlando and Orlando Police Department, Defendants.**

**No. 6:03–cv–215–Orl–18DAB.**

United States District Court, M.D. Florida, Orlando Division.

July 29, 2003.

Frank T. Allen, Allen & Dill, P.A., Orlando, FL, for Plaintiff.

Walter A. Ketcham, Jr., Jeanelle G. Bronson, Grower, Ketcham, Rutherford, Bronson, Edie and Telan, P.A.; Bruce R. Bogan, Hilyard, Bogan, Palmer and Lockeby, P.A.; Robert E. Bonner, Meier, Lengauer, Bonner, Muszynski and Doyle, P.A., Orlando, FL, for Defendants.

## ORDER

G. KENDALL SHARP, Senior District Judge.

THIS CAUSE comes before the Court upon Defendant's motion to dismiss (Doc. 19, filed 8 April 2003), to which Plaintiff has responded in opposition. (Doc. 27, filed 16 April 2003).

## I. BACKGROUND

Plaintiff Carol Purvis brings this lawsuit on behalf of her ex-husband, Thomas J. Logan, Jr. ("Logan"). On the night of 7 March 2001, in a prearranged operation, law enforcement officials arrested Logan at Orlando International Airport for drug possession. When arrested, Logan possessed approximately 85 grams of cocaine and 19.5 Xanax tablets, a powerful depressant. Before Logan's arrest, law enforcement officials discussed Logan's arrest and detention at a briefing. Officials distributed a bulletin detailing the specific risks concerning Logan's arrest. Present at this briefing was Orlando Police Officer Wendell Reeve ("Reeve"). At the briefing, Reeve learned that Logan was a serious flight risk and was potentially suicidal. Reeve allegedly stated that "any attempt by [Logan] to procure suicide by the police can be easily accommodated." (Doc. 1 at ¶ 12).

Immediately following his arrest, Logan informed two Drug Enforcement Administration officials that he had ingested approximately 10 Xanax tablets and no longer cared about living. Thirty minutes after his arrest, law enforcement officials placed Logan in a holding cell. Almost 90 minutes later, Reeve arrived to transport Logan to central booking. Reeve did not search or handcuff Logan, although Logan held his hands behind his back as if he was handcuffed. (Doc. 27 at 5). Reeve took Logan down an elevator to his patrol car, where Logan fled. Accounts of this situation differ: Reeve maintains that Logan overpowered him. Plaintiff, whose version the Court must accept for the purposes of this motion, claims that Reeve allowed Logan to flee without incident.

The remaining facts are not in dispute. Reeve and other officers pursued Logan as he scaled fences and eventually entered a retention pond. Law enforcement officials gathered at the shore of the pond, and a helicopter videotaped and illuminated Logan from above. Although a boat was located nearby, Reeve did not follow Logan into the retention pond in order to rescue or capture him, and Logan subsequently drowned.

Plaintiff Carol Purvis ("Plaintiff"), representing Logan's estate, filed a six-count complaint against the City of Orlando, the Sheriff of Orange County and Reeve. Plaintiff asserted that Reeve violated Logan's civil rights under 42 U.S.C. § 1983 by permitting him to escape and intentionally failing to aid him from drowning. Plaintiff argues that in doing so, Reeve violated Logan's Fourth, Fifth, Sixth, Eight and Fourteenth Amendment rights.

## II. DISCUSSION

### A. Motion to Dismiss

For purposes of a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Fed R. Civ. P. 12(b)(6); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir.1994). Furthermore, a court must accept all reasonable inferences from the complaint and consider all allegations as true. *Id.* A court may not, however, accept conclusory allegations and unwarranted factual deductions as true. *Gersten v. Rundle,* 833 F.Supp. 906, 910 (S.D.Fla. 1993) (*citing Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974)). Only pleadings and attached written exhibits may be considered in making these determinations. *See Fed. R.Civ.P.* 10(c); *GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir.1993). Unless it appears beyond doubt that a plaintiff can prove no set of facts entitling him to relief, a complaint should not be dismissed for failure to state a claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir. 1994).

A court may not assume, however, that plaintiff can prove facts that it has not alleged or that defendant has violated laws in ways that have not been alleged. *See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Beck v. Interstate Brands Corp.,* 953 F.2d 1275, 1276 (11th Cir.1992) (per curiam). Nor is the Court bound to accept as true a legal conclusion couched as a factual allegation. *See B.H. Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Although the federal rules embrace a liberal pleading standard, bald assertions and conclusions of law will not defeat a properly supported motion to dismiss. *See Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

### B. 42 U.S.C. § 1983

■ Plaintiff filed suit against Reeve for violations under 42 U.S.C. § 1983 ("Section 1983"). Although Section 1983 is not a source of substantive rights, it provides a conduit by which aggrieved parties may recover against those persons who have violated their rights under federal law. *See 42 U.S.C.* § 1983; *see also Skinner v. City of Miami, Fla.,* 62 F.3d 344, 347 (11th Cir.1995). To recover under Section 1983, Plaintiff must prove that Reeve acted under color of state law to deprive Logan of a right conferred by federal law. *See White v. Scrivner Corp.,* 594 F.2d 140, 141 (5th Cir.1979). The underlying bases for Plaintiff's Section 1983 claims are the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments. Plaintiff claims that Reeve: 1) unreasonably searched and seized Lo-

gan in violation of the Fourth Amendment; 2) subjected Logan to punishment without a trial by jury in violation of the Sixth and Eighth Amendments; 3) deprived Logan of due process of law in violation of the Fifth and Fourteenth Amendments.

In any action under Section 1983, the Court must first identify the underlying rights which Reeve allegedly violated. *See County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (stating that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all."). Plaintiff cites two cases standing for the proposition that "a police officer has a legal duty to provide safety to a person in his custody." (Doc. 27 at 7) (*citing Proffitt v. Ridgway,* 279 F.3d 503, 506 (7th Cir.2002); *Popham v. City of Talladega,* 908 F.2d 1561 (11th Cir.1990)). While this is true in some instances, it does not scratch the surface of this detailed area of law.

At three instances, Reeve is alleged to have violated Logan's constitutional rights. The Court analyzes these alleged violations in the order in which they occurred: 1) when Reeve failed to search or handcuff Logan before escorting him to the police car; 2) when Reeve allowed Logan to escape; and 3) when Reeve failed to save Logan from drowning. If the Court determines that Logan enjoyed no protection under the Constitution at these times, its inquiry ends. If, however, the Court finds that Plaintiff has articulated a possible violation, the Court will then analyze Reeve's qualified immunity defense.

■ As a preliminary matter, the Court finds that Plaintiff either cannot or does not articulate a constitutional violation under the Fifth, Sixth or Eighth Amendments. Plaintiff cannot state a constitutional violation under the Sixth or Eighth Amendments. Logan's Sixth Amendment right to counsel only attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *See Texas v. Cobb,* 532 U.S. 162, 167–68, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). As none of these proceedings occurred, Plaintiff can allege no Sixth Amendment violation. Similarly, the Eighth Amendment protects only those convicted of a crime. Pre-trial detainees are afforded even greater protection than convicted prisoners, but Logan was neither a convicted prisoner or a pre-trial detainee.[1] Therefore, Plaintiff cannot state a claim under the Eighth Amendment.

Plaintiff does not state a violation under the Fifth Amendment. Plaintiff's Fifth Amendment allegations are cryptic, alluding only to "depriving [Logan] of his liberty . . . in violation of his rights under the [F]ifth [A]mendment." (Doc. 1 at ¶ 23(c)). In her response to Reeve's motion to dismiss, Plaintiff does not elaborate on this claim. It does not appear as if Plaintiff is attempting to assert a Fifth Amendment violation based on Logan's right to avoid self-incrimination, but rather a due process argument akin to a Fourteenth Amendment claim. The Court may not assume, however, that Reeve has violated laws in ways that have not been alleged. *See Associated Gen. Contractors,* 459 U.S. at 526, 103 S.Ct. 897. Accordingly, the Court declines to address Plaintiff's Fifth Amendment claim as stated, progressing

---

1. The Court notes that even if Logan were a pre-trial detainee or a convicted prisoner, he would be afforded no protection under the Constitution for injuries incurred in an escape attempt. It is axiomatic that a pre-trial detainee or convict has no constitutional right to escape safely and without injury.

instead to Plaintiff's Fourth and Fourteenth Amendment allegations.

### 1. Reeve's Failure to Search or Handcuff

■ Plaintiff argues that Reeve violated Logan's Fourth and Fourteenth Amendment rights by failing to insure Logan was handcuffed. Logan held his hands behind his back, as if he was handcuffed, and Reeve simply escorted him to a squad car. Plaintiff cites no case law holding that Logan had a Fourth Amendment right to be searched or handcuffed, and the Court finds no authority for the principle. The Fourth Amendment expressly protects against unreasonable searches and seizures; it does not guarantee the right to be searched and seized.

■ Reeve's failure to search or handcuff Logan also does not meet the standard necessary to state a Fourteenth Amendment violation. In order to rise to the level of a Fourteenth Amendment violation, an official's behavior must "shock the conscience." *Lewis,* 523 U.S. at 846, 118 S.Ct. 1708. The Court engages in a detailed discussion of this standard in the following section, but finds no reason to do so here. While Reeve's alleged behavior may have been negligent, it cannot be classified as conscience-shocking.

### 2. Logan's Escape

■ Having determined that no constitutional violation existed when Reeve failed to search and handcuff Logan, the Court now examines whether a constitutional violation existed when Reeve allowed Logan to escape. Again, Plaintiff alleges constitutional violations under the Fourth and Fourteenth Amendments.

■ Logan's flight forestalls Plaintiff's reliance on a Fourth Amendment violation. Police pursuit in attempting to seize a fleeing suspect does not constitute a Fourth Amendment violation. *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct.

1547, 113 L.Ed.2d 690 (1991). Such a violation occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. County of Inyo,* 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original); *see also Lewis,* 523 U.S. at 845 n. 7, 118 S.Ct. 1708 (stating that attempted seizures are beyond the Fourth Amendment's scope). As Reeve did not terminate Logan's movement during his escape attempt, Plaintiff cannot rely on a Fourth Amendment violation.

■ Plaintiff's reliance on the due process clause of the Fourteenth Amendment presents a closer question. The due process clause is not implicated whenever a law enforcement official causes harm. *See Lewis,* 523 U.S. at 848, 118 S.Ct. 1708 (*citing Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). Consequently, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* (*citing Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Rather, Supreme Court cases dealing with allegedly abusive executive action inquire whether the alleged action "shocks the conscience." *Id.* at 846, 118 S.Ct. 1708. Intentionally injurious conduct by a law enforcement official, "unjustifiable by any government interest," is the most typical conscience-shocking behavior. *Id.* at 849, 118 S.Ct. 1708. Cases where the official's conduct falls somewhere between intentionally injurious and negligent present the closest questions. In all instances, the Court must examine whether behavior is conscience-shocking on a case-by-case basis, and whether the behavior is conscience-shocking expressly depends on the specific situation facing the law enforcement official. *See id.* at 850, 118 S.Ct. 1708.

■ To illustrate this point, the *Lewis* Court examined two disparate law enforcement situations: a custodial setting like prison or pre-trial detainment, and a non-custodial setting like a high-speed car chase. *See id.* at 851–54, 118 S.Ct. 1708. The *Lewis* Court found that behavior that might be conscience-shocking in the first instance may not be conscience-shocking in the second. Law enforcement officials have a duty to protect those in custody. *DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In a custodial setting, "forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare." *Lewis,* 523 U.S. at 851, 118 S.Ct. 1708. This duty extends to providing medical needs, and courts have held that the careful observation of known suicidal prisoners is encompassed therein. *Popham v. City of Talladega,* 908 F.2d 1561, 1563 (11th Cir.1990) (applying lesser "deliberate indifference" standard to jail officials' behavior in finding that those officials did not act wrongly in failing to prevent an inmate's suicide).

■ By contrast, a much higher standard exists when sudden events render forethought impossible. In situations like high-speed car chases, law enforcement officials must make decisive, instantaneous judgments "in haste, under pressure, and frequently without the luxury of a second chance." *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The *Lewis* Court wisely reasoned that to find a due process violation in this instance by comparing it to a prison neglect case is improper. In a custodial setting, "liability for deliberate indifference rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lewis,* 523 U.S. at 853, 118

S.Ct. 1708 (*citing Daniels,* 474 U.S. at 332, 106 S.Ct. 662). In a more pressure-filled setting, even "precipitate recklessness fails to inch close enough ..." to constitute conscience-shocking behavior. *Id.*

Even though Reeve reacted to a situation that he allegedly caused, the Court cannot properly analogize Reeve to a prison official enjoying the luxuries of unhurried judgments. Logan was not detained in a jail cell. Similarly, given Reeve's knowledge of Logan's suicidal state, the flight risk he posed, and his alleged willingness to let him flee, the Court cannot properly analogize Reeve to an officer in the midst of a completely unexpected high-speed car chase.

The Court, unable to find a situation in existing case law analogous to the instant case, finds that Logan's situation falls somewhere between these situations. Viewing the facts in the light most favorable to Plaintiff, Reeve allowed Logan to escape. This implies some degree of forethought by Reeve. Nevertheless, Reeve cannot be held accountable for Logan's actions subsequent to his escape. Reeve had no way of knowing Logan would jump the fences he jumped, or enter the retention pond where he drowned. There are no allegations that Reeve herded Logan over the fences and into the pond, or that he released Logan with the specific intention of causing Logan's death. The allegations are simply that Reeve pursued Logan to the retention pond and failed to aid him.

The question before the Court is one of Reeve's intent. The *Lewis* Court held that "just as a purpose to cause harm is needed for Eighth Amendment liability in a prison riot, so it ought to be needed for due process liability in a pursuit case." *Id.* at 584, 118 S.Ct. 1708. Plaintiff makes no specific factual allegations concerning Reeve's actions or intent in allowing Logan

to escape. In the absence of such allegations, the Court cannot assume that Plaintiff can prove facts that she has not alleged. *See Associated Gen. Contractors of Cal.*, 459 U.S. at 526, 103 S.Ct. 897. Consequently, the Court finds that Plaintiff has not stated a Fourteenth Amendment violation.

### 3. *Logan's Death*

■■■ Finally, the Court must assess Plaintiff's argument that Reeve violated Logan's Fourth and Fourteenth Amendment rights by failing to rescue him from the retention pond. Again, Plaintiff's Fourth Amendment claim must fail. Essentially, Plaintiff argues that Reeve had an affirmative duty to seize Logan once he entered the retention pond, and Reeve's failure to do so was tantamount to a Fourth Amendment violation. This argument is meritless. The Fourth Amendment does not guarantee a right to be seized. It certainly does not guarantee a fleeing prisoner's right to be seized during an escape attempt.

Plaintiff's Fourteenth Amendment claim fails for identical reasons as in the previous section. The Court's inquiry must center around whether Reeve's inactions at the retention pond shocked the conscience. *See Lewis*, 523 U.S. at 846, 118 S.Ct. 1708. Again, Plaintiff fails to allege facts constituting conscience-shocking behavior, and the Court cannot infer or create these facts on her behalf. There are no allegations in the complaint that reflect Reeve's intent to cause Logan's death by somehow guiding him to the retention pond. Rather, the complaint states that a "chase ensued during which [Logan] scaled fences and eventually entered a retention pond." (Doc. 1 at ¶ 15). If Reeve indeed herded or forced Logan into the pond, it could constitute conscience-shocking behavior. In the absence of such allegations, however, the Court will not hold that Reeve's failure to wade into a pond to apprehend a "struggling" escaped prisoner violates·the Constitution.

### III. CONCLUSION

Because Plaintiff has not stated any constitutional violations, the Court is not obligated to discuss qualified immunity. Nevertheless, should Plaintiff wish to move for leave to amend her complaint, both parties must be mindful of this issue. First, Reeve must demonstrate that he was acting within the scope of his discretionary authority when Logan's flight took place. *See Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir.1995). Second, Plaintiff must cite controlling authority[2] when arguing that Reeve objectively violated clearly established law. *See id.* "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Kelly v. Curtis*, 21 F.3d 1544, 1550 (11th Cir.1994) (*quoting Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993)).

So far, Plaintiff has submitted no clearly existing case law on the issue before the Court. Plaintiff fails to cite authority holding that a law enforcement officer cannot purposely allow a prisoner to escape into a dangerous situation. Furthermore, she does not submit authority declaring that if a law enforcement officer does allow such a situation, he has an affirmative duty to rescue the escapee. Finally, Plaintiff cites no case holding that a law enforcement officer must place themselves in mortal danger in order to effectuate the rescue.

---

**2.** The only courts relevant to the determination of clearly established law are the United States Supreme Court, the Eleventh Circuit Court of Appeals and the Florida Supreme Court. *See Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 n. 4 (11th Cir.1997) (en banc).

As pled, however, Plaintiff's complaint currently states no constitutional violations. For this reason, Reeve's motion to dismiss (Doc. 19, 8 April 2003) is **GRANTED.** Plaintiff's case against Reeve is **DISMISSED WITHOUT PREJUDICE.** All other pending motions are **DENIED AS MOOT.**