Ramon A. MERCADO, Plaintiff,

v.

The CITY OF ORLANDO, a municipal corporation and political subdivision of the State of Florida, Officer Ramfis Padilla, and, Officer Christina Rouse, individually and as agents and employees of The City of Orlando and Orlando Police Department, Defendants.

No. 6:03–cv–227–ORL–18KRS.

United States District Court,
M.D. Florida,
Orlando Division.

June 24, 2004.

John W. Dill, Attorneys Trial Group, John W. Dill, The Allen Firm, P.A., Orlando, FL, for Plaintiff.

Bruce R. Bogan, Hilyard, Bogan, Palmer & Lockeby, P.A., Orlando, FL, for Defendants.

## ORDER

G. KENDALL SHARP, Senior District Judge.

THIS CAUSE comes before the Court upon Defendants' motion for reconsideration (Doc. 52, filed April 21, 2004), to which Plaintiff has responded in opposition (Doc. 54, filed May 6, 2004). After considering the arguments set forth by the parties, the Court hereby grants Defendants' motion and issues the following amended order.

## I. BACKGROUND

On the morning of June 29, 2002, Plaintiff's wife, Ibis Mercado ("Ms. Mercado"), told Plaintiff that she was going to leave him. Plaintiff became upset and told her that he would kill himself if she left him. He wrapped a telephone line around his neck and wrapped the other end around a ceiling vent. Plaintiff stated in his deposition that he planned to use the telephone line to hang himself. He also used a kitch-

en knife to make multiple cuts across his arm. Plaintiff then held the knife with both hands against his chest and pointed it at his heart. Ms. Mercado took the phone and ran from the apartment. Plaintiff locked the door behind her.

Ms. Mercado called the Orlando Police Department, and Defendant Officer Ramfis Padilla ("Officer Padilla"), Defendant Officer Christina Rouse ("Officer Rouse"), and other officers were dispatched to investigate. Ms. Mercado told the officers that Plaintiff was armed with a knife and was threatening to commit suicide. The officers remained outside the apartment for twenty to twenty-five minutes trying, but failing, to make verbal contact with Plaintiff. Ms. Mercado gave the officers a key and they entered the apartment. They found Plaintiff sitting on the kitchen floor and crying, holding the knife with both hands and pointing it to his heart. The telephone line was still wrapped around his neck, but no longer attached to the ceiling.

Plaintiff alleges that an officer ordered him two times to put the knife down. Officer Padilla testified in his deposition that he repeatedly ordered Plaintiff to put the knife down, in both English and Spanish. Plaintiff did not put the knife down, although he made no threatening movements toward the officers. Officer Rouse ordered Officer Padilla to use the "Sage SL6 Launcher" ("Sage launcher") and hit Plaintiff two times. According to Defendants' expert, Major Steven Ijames, the Sage launcher fires a polyurethane (soft plastic) baton that is 1.5 inches wide and travels much slower than a bullet and delivers less impact.[1] The Sage launcher is primarily used to protect persons from

---

1. The baton travels at approximately 240 feet per second and delivers 154 foot/pounds of energy (approximately the energy level of a professionally thrown fastball). By compari-

son, a 9mm handgun delivers a bullet that is 1/3 of an inch wide, travels at 1,200 feet per second, and delivers approximately 400 foot/pounds of energy. (Ijames Aff., ¶ 6.)

self-inflicted injury, when a "night stick" would be unsafe or impractical to use. It is not designed to penetrate the body and generally causes only minor bruises or abrasions. (Ijames Aff., ¶¶ 5–7.)

Standing approximately six feet away from Plaintiff, Officer Padilla alleges that he aimed for Plaintiff's shoulder. Officer Padilla fired twice and hit Plaintiff once in the head. The shot fractured Plaintiff's skull and caused injuries to his brain. Plaintiff takes medication to prevent seizures and suffers from headaches, loss of memory, loss of balance, insomnia, dizziness, stuttering, loss of sensation and movement, loss of strength, and sensitivity to light. The Social Security Administration classified Plaintiff as disabled and he no longer works.

## II. DISCUSSION

### A. Summary Judgment

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c); *see, e.g., Stachel v. City of Cape Canaveral,* 51 F.Supp.2d 1326, 1329 (M.D.Fla.1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Matsushita Elec. Ind. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy its burden. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548.

When the non-moving party has the burden of proof at trial, the moving party may meet its initial burden in one of two ways. It may support the motion by directing the Court's attention to affirmative evidence "that negates an essential element of the non-moving party's claim." *Celotex,* 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting).[2] Alternatively, the moving party may point out to the court the "absence of evidence to support the non-moving party's case." *Id.* at 324, 106 S.Ct. 2548; *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–16 (11th Cir. 1993).

If the moving party shows the absence of a genuine material fact that is triable, in either of these ways, and that it is entitled to judgment, the burden shifts to the non-moving party to make a sufficient showing to establish the essential elements of her case with respect to which she has the burden of proof. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In contrast to the moving party, the non-moving party may not rest solely on her pleadings to satisfy this burden and escape summary judgment. *Id.* at 324, 106 S.Ct. 2548. It must designate evidence within depositions, answers to interrogatories or admissions that indicates that there is a genuine issue for trial.

---

2. Justice Brennan agreed with the plurality's analysis of the standard for summary judg-

ment in *Celotex.* He dissented on the basis of the facts of the case.

Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

### B. 42 U.S.C. § 1983

Although Section 1983 is not a source of substantive rights, it provides a conduit by which aggrieved parties may recover against those who have violated their rights under federal law. *See* 42 U.S.C. § 1983; *see also Skinner v. City of Miami, Fla.*, 62 F.3d 344, 347 (11th Cir.1995). To recover under Section 1983, Plaintiff must prove that Defendants acted under color of state law to deprive the Plaintiff of a right conferred by federal law. *See White v. Scrivner Corp.*, 594 F.2d 140, 141 (5th Cir.1979).[3]

In addition to the Fourth Amendment claims discussed below, Plaintiff also presented claims under the Fifth Amendment, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment. Defendants failed to move to dismiss these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. By neglecting any mention of these claims in their motion for summary judgment, Defendants failed to meet their burden at summary judgment, which is discussed in the previous section. Defendants also failed to abide by Local Rule 3.01(a), which requires a "brief or legal memorandum with citation of legal authorities in support of the relief requested." Defendants now argue in their motion for reconsideration, properly supported with legal authority, that these claims are meritless. Defendants are, of course, correct. *See Riley v. Camp*, 130

F.3d 958, 972 (11th Cir.1997) (no Fifth Amendment claim absent federal action); *Purvis v. City of Orlando*, 273 F.Supp.2d 1321, 1325 (M.D.Fla.2003) (Sixth Amendment not implicated until adversarial judicial proceedings have been initiated); *id.* (Eighth Amendment protects only those convicted of a crime); *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (Fourth Amendment, rather than Fourteenth Amendment substantive due process approach, should be used to evaluate excessive force cases). The Court accordingly grants summary judgment with respect to Plaintiff's claims under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

### 1. Officer Padilla and Officer Rouse: Individual Capacity Claims

 Plaintiff alleges that by shooting him in the head with the Sage launcher, Officer Padilla and Officer Rouse violated his Fourth Amendment right to be free from the use of excessive force.[4] Officer Padilla and Officer Rouse assert the defense of qualified immunity. The Eleventh Circuit has established a two-part analysis to determine whether qualified immunity is available. *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir.1995). First, the defendant must prove that he was acting within the scope of his discretionary authority when the alleged wrongful action took place. *Id.* (citing *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983)). There is no dispute in the instant case that the challenged act was within the discretionary authority of Officer Padilla and Officer Rouse. The burden then shifts to the plaintiff to show that the defendant violated the plaintiff's constitutional rights and

---

3. This case is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

4. A supervising officer that orders the act may be vicariously liable for the acts of his or her subordinate. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995); *Ford v. Byrd*, 544 F.2d 194, 195 (5th Cir.1976).

that these rights were clearly established. *Id.*

■■■■ Claims of excessive force are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To determine whether the force used was objectively reasonable, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Lee v. Ferraro,* 284 F.3d 1188, 1197 (11th Cir.2002) (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865). Application of the reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865; *see Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir.1993); *Durruthy v. Pastor,* 351 F.3d 1080, 1094 (11th Cir.2003). Use of force must be judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Post,* 7 F.3d at 1559. In making this determination, the Court must resolve all factual disputes about Defendants' conduct in Plaintiff's favor. *Foy v. Holston,* 94 F.3d 1528, 1530 n. 1 (11th Cir.1996).

■■■■ Because the officers were trying to resolve an attempted suicide, rather than halt the progression of a crime, the instant case does not fit neatly into the *Graham* analysis. The Court cannot assess the "severity of the crime" because suicide and attempted suicide are not crimes in Florida. *See Krischer v. McIver,* 697 So.2d 97, 100 (Fla.1997). Plaintiff did not pose an immediate threat to anyone other than himself: he was not aggressive or belligerent, and he did not threaten the officers, verbally or physically. Plaintiff did not physically resist arrest nor did he flee. The Supreme Court specified, however, that the *Graham* balancing scheme would apply not only to excessive force used during an arrest, but to excessive force used during any "other 'seizure' of a free citizen."[5] *Graham,* 490 U.S. at 395, 109 S.Ct. 1865. The Court will accordingly adapt the *Graham* factors to the case at hand in order to weigh the competing governmental and individual interests.

It is undisputed from the deposition testimony of Plaintiff and Officer Padilla that Plaintiff was holding a knife with two hands and pointing it at his heart.[6] He refused to drop the knife after being ordered at least twice to do so. Although

---

**5.** A seizure occurs when government actors have, "by means of physical force or show of authority ... in some way restrained the liberty of a citizen." *Graham,* 490 U.S. at 395, 109 S.Ct. 1865 (citing *Terry v. Ohio,* 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Given that Plaintiff was surrounded by officers in his kitchen, the Court finds there was a seizure. Although the constitutionality of this seizure is not challenged, the Court notes in passing that an officer may seize and detain a person for mental health evaluation with probable cause. *Monday v. Oullette,* 118 F.3d 1099, 1104 (6th Cir.1997) (citations omitted); *see also Fla Stat.* ch. 394.463 (law enforcement may use reasonable force to take person into custody for involuntary mental health evaluation).

**6.** Officer Padilla reported that Plaintiff was holding the knife so as to cause an "indentation" in his chest. Plaintiff argues the medical records show no wound indentation Plaintiff's chest. (Doc. 35, Exh. F; Exh. G). Resolving disputed facts in Plaintiff's favor for the purposes of summary judgment, the Court will assume that the Plaintiff was holding the knife to his chest, but not inserting it into his chest.

Plaintiff did not turn "blue" until after he was shot, he also had a telephone line wrapped around his neck.[7] Plaintiff was posing an immediate threat of harm to himself, and the officers acted to promote a strong governmental interest in preserving Plaintiff's life. This interest alone may justify the use of force. *See Monday,* 118 F.3d at 1104–05 (interest in transporting suicidal plaintiff to hospital justified use of pepper spray to subdue him); *see also Cruzan v. Dir., Missouri Dept. of Health,* 497 U.S. 261, 281–282, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (in the context of refusal of life-sustaining treatment, the state has an "unqualified interest in the preservation of human life" which must be weighed against the individual's constitutionally protected interests).

The Court must weigh the interest in preserving Plaintiff's life against the nature and quality of the intrusion. The intrusion was significant: Plaintiff's skull was fractured, causing lasting damage. Officer Padilla did not warn Plaintiff before shooting. On the other hand, the situation was highly volatile. After being ordered at least twice, Plaintiff refused to drop the knife, a deadly weapon. Judging this use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Post,* 7 F.3d at 1559, the Court finds that a reasonable officer could have shot Plaintiff in the head.[8]

Even if Officer Padilla and Officer Rouse had violated Plaintiff's Fourth Amendment rights, the Court concludes that the law on this violation was not clearly established. For a constitutional right to be clearly established, " 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Williams v. Alabama State Univ.,* 102 F.3d 1179, 1182 (11th Cir.1997) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Plaintiffs may show law is clearly established in any one of three ways.

First, Plaintiff may point to "materially similar" controlling precedent that prohibits the challenged behavior.[9] Plaintiff cites *Vinyard v. Wilson,* in which the Eleventh Circuit found that where the plaintiff was under arrest, handcuffed behind her back, and secured in the back seat of a patrol car with a protective screen between her and the officer, the officer used excessive force in applying pepper spray to try to stop her from screaming insults at the officers. 311 F.3d 1340, 1355 (11th Cir.2002). The instant case is fairly distinguishable: the plaintiff in *Vinyard* was securely under the control

---

7. Officer Padilla maintained Plaintiff was turning blue from the cord wrapped around his neck. Plaintiff testified in his deposition that he was not having trouble breathing, and Officer Gogals and Officer Burgos reported that they did not see Plaintiff turned blue until after he was shot. (Doc. 35, Exh. D at 4; Exh. E at 5). Again, the Court resolves this fact in Plaintiff's favor for the purposes of summary judgment.

8. *Cf. Wood v. City of Lakeland,* 203 F.3d 1288, 1293 (11th Cir.2000) (no excessive force where officers fatally shot suicidal plaintiff who moved quickly toward officers with knife); *Bell v. Irwin,* 321 F.3d 637, 640 (7th

Cir.2003) (no excessive force where suicidal plaintiff threatened to ignite propane tank).

9. The only courts relevant to the determination of clearly established law are the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Florida Supreme Court. *See Jenkins v. Talledega Bd. Of Educ.,* 115 F.3d 821, 827 n. 4 (11th Cir.1997) (en banc). Law from other Circuit Courts of Appeal, to which Plaintiff frequently cites, is irrelevant for the purposes of determining whether the law is clearly established, and the Court does not address such cases in this discussion.

of the officers and not threatening harm to anyone or carrying a dangerous weapon, whereas Plaintiff was not under the control of the officers, was holding a knife, and had threatened to kill himself. Plaintiff also fails to produce any controlling precedent that a warning was required before shooting in materially similar circumstances, nor is the Court aware of any.[10]

■ The law may also be clearly established by some broad principle stated in case law. *Vinyard,* 311 F.3d at 1351; *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1278 (11th Cir.2004). For example, a court may hold that a certain type of conduct is unconstitutional without tying that determination to a particularized set of facts. *See Vinyard,* 311 F.3d at 1351. "If a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a governmental official," however, "it must do so 'with obvious clarity' to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id.* Plaintiff argues that the law is "clearly established that using deadly force in a non-deadly situation violates the Fourth Amendment." (Doc. 35 at 12 (citing *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985))). This principle is certainly established,[11] but it does not establish the law applicable to the specific set of facts facing Officer Padilla and Officer Rouse with the requisite clarity. In a case such as this, an officer would have to assess whether the force is deadly and whether the suspect posed an imminent threat of danger to others.[12] Officer Padilla's action, then, is not subject to a "broad principle" within the meaning of *Vinyard. See also Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1032 (11th Cir.2001) (specific case law will almost always be necessary where the legal standard is a highly general one, such as "to act reasonably" or "to act with probable cause"); *Jones v. City of Dothan,* 121 F.3d 1456, 1460 (11th Cir.1997) (broad principle that use of excessive force by a law enforcement officer is a constitutional violation was insufficient to clearly establish the law); *cf. Holloman ex rel. Holloman,* 370 F.3d 1252, 1278 (holding that law was clearly established by general principle that directed teachers to assess whether a student is engaged in "expression"

10. Plaintiff correctly distinguishes *McCormick v. City of Fort Lauderdale,* in which the Eleventh Circuit held that a warning was not required before using deadly force because the police had probable cause to believe the suspect had committed a violent felony and still posed a further threat of violence. 333 F.3d 1234, 1245 (11th Cir.2003). Yet Plaintiff fails to set forth any case law stating a warning is needed in circumstances materially similar to those in the instant case.

11. Plaintiff loosely paraphrases *Garner,* which states: "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead.... [I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Garner,* 471 U.S. at 11–12, 105 S.Ct. 1694.

12. While not controlling in a constitutional inquiry, as an example, Florida defines deadly force as "force that is likely to cause death or great bodily harm ... [it] does not include the discharge of a firearm by a law enforcement officer or correctional officer during and within the scope of his or her official duties which is loaded with a less-lethal munition. As used in this subsection, the term "less-lethal munition" means a projectile that is designed to stun, temporarily incapacitate, or cause temporary discomfort to a person without penetrating the person's body." *Fla. Stat.* ch. 776.06 (2003).

and whether the expression has a "non-negligible disruptive effect").

■■■■ Finally, "the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Vinyard*, 311 F.3d at 1350. To fall within this narrow exception, Plaintiff must show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Lee*, 284 F.3d at 1198. In excessive force cases, plaintiffs can overcome qualified immunity only if "application of the [excessive force] standard would inevitably lead every reasonable officer in [the Defendants'] position to conclude the force was unlawful." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926–27 (11th Cir.2000).

■■■■ Assuming, without deciding, that Officer Padilla and Officer Rouse violated department policy by shooting Plaintiff in the head and failing to summon a crisis negotiation team, this alone does not remove qualified immunity.[13] Section 1983 protects plaintiffs from constitutional violations, not violations of state statutes, administrative regulations, or departmental policy. *See Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (holding, in the context of "clearly established law," that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *Ensley v. Soper*, 142

F.3d 1402,1407 n. 4 (11th Cir.1998) (plaintiffs cannot base claim on violation of departmental policy alone).

Officer Padilla was faced with a man who had threatened suicide and who refused to drop a knife he held to his chest. Officer Padilla acted not to effectuate an arrest, but to prevent Plaintiff from hurting himself. The Court cannot say that, in these circumstances, the force used "was so far beyond the hazy border between excessive and acceptable force that [Officer Padilla] had to know he was violating the Constitution even without caselaw on point." *Priester*, 208 F.3d at 926–27. An example of acceptable force in subduing a suicidal person would have been using a single burst of pepper spray. *Monday*, 118 F.3d at 1104–05. The Court hypothesizes that clearly excessive force would have been shooting Plaintiff in the head with a bullet. This is a much closer case, however, and the Court finds that Officer Padilla's use of the Sage launcher is most appropriately classified as being within "the hazy border between excessive and acceptable force."

The Court also notes that when the Eleventh Circuit has found the law clearly established under this narrow exception, the cases all include situations in which force was used against a plaintiff who was already subdued. *See Vinyard*, 311 F.3d at 1355 (facts as above); *Lee*, 284 F.3d at 1199 (officers led plaintiff to the back of her car and slammed her head against the trunk after she was arrested and secured in handcuffs); *Priester*, 208 F.3d at 927 (officer released police dog to attack plaintiff who was lying on the ground, did not

---

**13.** Department policy provides that "Targeting the head or neck with the baton or Sage SL6 projectiles is acceptable in deadly force situations only." (Pigman Aff., Exh. A, "Attachment B".) The policy also provides that a crisis negotiation team shall be activated when, among other circumstances, a con-

tained person has threatened to take his own life, has the apparent ability to do so, and refuses to surrender. (Pigman Aff., Exh. B at 2.) The Court is not aware, however, of any precedent imposing a constitutional requirement to deploy a crisis negotiation team or like measures.

pose a threat to officers or to anyone else, and was not attempting to flee or resist arrest); *Slicker v. Jackson,* 215 F.3d 1225, 1233 (11th Cir.2000) (officers beat plaintiff even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way); *Smith v. Mattox,* 127 F.3d 1416, 1419–20 (11th Cir.1997) (officer, while on plaintiff's back and handcuffing him, broke plaintiff's arm requiring surgery for multiple fractures even though plaintiff at the time was offering no resistance). The instant case clearly differs from the preceding cases in that Plaintiff was not subdued, was not cooperating with police, was holding a deadly weapon, and appeared to pose an imminent threat of harm to himself.

The Court thus finds that the law was not clearly established and that Officer Padilla and Officer Rouse, as his supervising officer, are entitled to qualified immunity. Defendants' motion for summary judgment is granted as to Plaintiff's Fourth Amendment claim under 42 U.S.C. § 1983 against Officer Padilla and Officer Rouse.

### 2. The City of Orlando

An official capacity claim in a Section 1983 action "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," and is not a suit against the official personally. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611). Furthermore, "[a]s long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166, 105 S.Ct. 3099. No damages may be recovered from the official in an official capacity claim. *Id.* Because the City received notice of the

claim, to the extent that Plaintiff seeks redress from Officer Padilla and Officer Rouse in their official capacity, the Court evaluates the action against the City.

The City may not be held liable in a Section 1983 action solely on a *respondeat superior* theory. *See Monell,* 436 U.S. at 691, 98 S.Ct. 2018. The Plaintiff must be adversely effected by a City policy or custom, which has been made by lawmakers or by those to whom official acts may be attributed. *Id.* at 694, 98 S.Ct. 2018. A policy may be promulgated by the municipal legislative body, by an agency exercising authority delegated by the municipal legislative body, or by an individual with "final decision-making authority." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Monell,* 436 U.S. at 661, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality may also be liable if there is a "custom" of unlawful behavior. The custom must be longstanding and widespread, and officials must have known about the custom and have failed to stop it. *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir.1991). Finally, a municipality may be liable under "limited circumstances" for inadequate training. *See City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998). Because a municipality will rarely have an express policy of inadequate training, the Supreme Court has held that the failure to train must evidence "deliberate indifference" to the rights of the municipality's inhabitants. *Canton,* 489 U.S. at 388–89, 109 S.Ct. 1197.

Plaintiff alleged in his complaint that the City promulgated vague, confusing, and contradictory rules regarding the use of force. As Defendant has pointed out, however, the City has in place constitutional

policies on the use of force.[14] Plaintiff has failed to point out how these policies are vague, confusing or contradictory. Plaintiff also alleged the City failed to enforce departmental, state, and federal law regarding subduing of potential suicidal citizens. Plaintiff has presented no examples of such federal law and the Court cannot evaluate whether the City failed to enforce it. And as discussed above, violation of departmental policy and state policy is irrelevant in a constitutional inquiry.

The only claim for which Plaintiff attempts to present evidence is his allegation that the City "promulgated rules allowing citizens to be shot and using greater force than necessary."[15] In support of this claim, Plaintiff alleges that his sister asked Officer Burgos why the police shot Plaintiff in the head. Officer Burgos allegedly responded they are trained to shoot for the head. (Vargas Aff., ¶ 4). This scant evidence is, however, inadmissible hearsay. (Doc. 42, ¶ 7.) Furthermore, its prejudicial effect substantially outweighs any probative value. *Fed.R.Evid.* 403. Plaintiff has presented no admissible evidence of an unconstitutional policy. Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim against the City under 42 U.S.C. § 1983 is accordingly granted.

### C. Negligent Training and Negligent Supervision

 Plaintiff also brings state law claims against the City for negligent training and negligent supervision. The City argues that these state law negligence claims are barred by Florida's sovereign immunity. The State of Florida and its subsidiaries, including municipalities, are generally immune from tort liability, but Florida has waived this immunity "under circumstances in which the state or agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state." *See Fla. Const.*, Art. X, § 13; *Fla. Stat.* § 768.28(1). Florida courts have found, however, that the waiver of sovereign immunity does not apply when the challenged acts are "discretionary" rather than merely "operational." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). Thus, to decide whether the City is entitled to sovereign immunity, the Court must evaluate whether the acts challenged by Plaintiff are more appropriately classified as discretionary or operational in nature.

### 1. Negligent Training

The Eleventh Circuit, applying Florida law, held that "[a] city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Lewis*, 260 F.3d at 1266. The court contrasted this type of governmental activity with the implementation or operation of the police training program as it related to the officers involved in the underlying offense. *Id.; see also Borges v.*

---

14. The City's use of force policy provides that "Targeting the head or neck with the baton or Sage SL6 projectiles is acceptable in deadly force situations only." (Pigman Aff., Exh. A, "Attachment B".) "Deadly force" is defined as "any action by a subject or a member that is likely to cause death or great bodily harm." (*Id.* at "OP–39B, Use of Force".)

15. Although the parties brief this as an "inadequate training" claim employing the "delib-

erate indifference" standard, the Court finds it is more properly evaluated as a *municipal custom or policy*. *Canton* and its progeny address *failures* to train, and use the deliberate indifference test because in such cases no official or unofficial training policy would exist. Although the official use of force policy in this case appears constitutional on its face, there may still be a custom or unofficial policy of unlawful training.

*City of West Palm Beach,* 1994 WL 397301, at \*6–7 (S.D.Fla.1994) (finding sovereign immunity where complaint was in essence about strategies implemented in sting operations because such decisions are discretionary). In this case, Plaintiff states that he is challenging "the implementation of those [training] programs, particularly as to Padilla and Rouse, on potentially suicidal or emotionally distraught citizens." (Doc. 35 at 20). Plaintiff has, however, offered no evidence of how these programs were implemented as to Officer Padilla and Office Rouse. He has merely presented evidence of the content of the training. The City's choice as to the content of the training is a discretionary activity, and Plaintiff's claim is thus barred by sovereign immunity.[16] Defendants' motion for summary judgment is granted on Plaintiff's negligent training claim.

### 2. Negligent Supervision

█ Plaintiff's negligent supervision claim is not barred by sovereign immunity. The Court finds that a challenge to the quality of supervision of Officer Padilla and Rouse, rather than to the content of City's supervision policy, is a challenge to an "operational" task rather than to a discretionary task. *See Newsome v. Dep't of Corr. of State of Fla.,* 435 So.2d 887, 888–89 (Fla. 1st DCA 1983) (contrasting the choice to classify a prisoner as a medium or minimum security, which is discretionary, to the "operational" function of actually supervising an inmate).

█ To sustain a negligent supervision claim, Plaintiff must prove the conventional elements of negligence: (1) existence of a duty on the part of the defendant to protect the plaintiff from the injury or damage of which he complains; (2) failure of the defendant to perform that duty; and (3) injury or damage to the plaintiff proximately caused by such failure. *Geidel v. City of Bradenton Beach,* 56 F.Supp.2d 1359, 1366 (M.D.Fla.1999). Assuming the existence of a duty on the part of the City to Plaintiff, breach of this duty is established "when, during the course of employment, the employer becomes aware, or should have become aware, of problems with an employee that indicates his unfitness, and the employer fails to take further action such as investigation, discharge, or reassignment." *Samedi v. Miami–Dade County,* 134 F.Supp.2d 1320, 1352–53 (S.D.Fla.2001). Plaintiff has offered no evidence that the City had actual or constructive notice of any unfitness on the part of Officer Padilla or Officer Rouse prior to the shooting. Defendants' motion for summary judgment is accordingly granted on Plaintiff's negligent supervision claim.

### III. CONCLUSION

Based on the foregoing discussion and upon careful consideration of the record and all relevant law, it is **ORDERED** and **ADJUDGED** that Defendants' Motion for Reconsideration (Doc. 52, filed April 21, 2004) is **GRANTED**. Defendant's motion for summary judgment as to Plaintiff's remaining Section 1983 claim against the City is accordingly granted. The Clerk of Court is directed to **CLOSE THE CASE** and **ENTER JUDGMENT** in favor of the Defendants.

---

**16.** The Court is mindful that Plaintiff has alleged that the City used an unconstitutional training policy. The Court's holding does not prevent Plaintiff from challenging the policy itself under section 1983.