**Charles DAVIDSON, et. al., Plaintiffs,**

v.

**CITY OF JACKSONVILLE, Florida, et al., Defendants.**

No. 3:03–CV–343–J–20MCR.

United States District Court,
M.D. Florida,
Jacksonville Division.

Feb. 16, 2005.

Frank A. Ashton, Peek, Cobb, Edwards & Ashton, P.A., Brian Martin Flaherty,

Farah & Farah, P.A., Jacksonville, FL, for Plaintiffs.

Howard M. Maltz, Deputy General Counsel, Jacksonville, FL, for City of Jacksonville.

Don Lester, Lester and Mitchell, PA, Jacksonville, FL, for Defendants.

### *ORDER*

SCHLESINGER, District Judge.

Before the Court are multiple Motions for Summary Judgment filed by the named Defendants (Doc. No. 85, filed December 13, 2004) and the City of Jacksonville (Doc. No. 87, filed December 13, 2004). Plaintiffs also filed a Motion for Partial Summary Judgment regarding certain affirmative defenses (Doc. No. 86, filed December 13, 2004). Responses have been filed to each Motion.

### *Factual Background*

This case centers around an unfortunate event that resulted from the individual Defendants' providing emergency medical services to Plaintiff, Mr. Davidson. On March 20, 2001, Mr. Davidson began suffering from an episode of hypoglycemia. Just after 5 a.m., Mrs. Davidson called 911 and stated "I need an ambulance at my house again my husband's going into a coma again ... he's diabetic." (Doc. No. 85, Exhibit 6) During this call, Plaintiffs' child also reported to the 911 operator that blood was coming out of Mr. Davidson's mouth. During a second 911 call, Mrs. Davidson informed the operator that her husband was "flipping around in the bed and fighting with me and flipping over on his stomach." Id. The operator explained the importance of keeping Mr. Davidson breathing and of getting him on his back or side. Apparently, Mrs. Davidson then attempted to move her husband and keep him on his back or side. Mrs. Davidson informed the operator that "he's fighting with us, I've got my neighbor over here and we're trying to hold him. He tried to get up." [1] Id. Until the arrival of medical

---

[1]. The Court notes that during her deposition Mrs. Davidson acknowledged that she used

assistance, Lila Hanson (the Davidsons' neighbor) sat with Mr. Davidson and has stated that he was lying calmly in bed.

Based on the 911 call, the Jacksonville Fire and Rescue Department (JFRD) dispatched emergency medical personnel from Rescue Unit 31 and Fire Engine 31 to the Davidson home. Upon arrival at the home, Mrs. Davidson advised the medical personnel of the medications Mr. Davidson was taking, that he was diabetic, and that recently he had been experiencing back pain. When the JFRD personnel entered the room, Mr. Davidson was unresponsive and seemingly suffering from an altered state of consciousness. It is undisputed that Mr. Davidson was unable to appreciate the situation and was disoriented. During his deposition, when asked whether he was conscious and able to consent while rescue personnel were in his home, Mr. Davidson responded that he was not.[2] (Doc. No. 85, Exhibit 7)

JFRD personnel forcibly held Mr. Davidson down while attempting to check his vital signs. They then attempted to establish an intravenous line to administer medicine. They placed an IV in Mr. Davidson's left arm, but the line was pulled out because of Mr. Davidson's resistance. They then established an IV in his right arm, and they administered a dextrose solution, used to treat low blood sugar, and Narcan.

The JFRD personnel did not believe Mr. Davidson was responding to the medicine as Mr. Davidson continued to be disoriented and resistant to their attempts at treatment. JFRD personnel then radioed the dispatcher and requested more assistance. Because JFRD backup was delayed, dispatch was radioed again. This time the assistance of the Jacksonville Sheriff's Office was requested. Officer Mark Williams, and the second fire engine, arrived more than 20 minutes after the first responders arrived. Although JFRD personnel had attempted to treat Mr. Davidson for those 20 minutes, he remained non-cooperative and disoriented. Because of this, JFRD personnel decided that Mr. Davidson needed to be taken to the hospital for further treatment. JFRD personnel further determined that Mr. Davidson needed to be restrained in order for him to be safely transported, and they requested Officer William's handcuffs.

In order to restrain Mr. Davidson, JFRD personnel rolled Mr. Davidson onto his stomach. They then secured his hands with handcuffs and tied his ankles together with bandages. They then proceeded to take a piece of the bandage from around his ankles and tied it to the handcuffs. This did not result in Mr. Davidson's hands and ankles touching as there was at least 6 inches of slack in the bandage. This type of restraint is typical referred to as a "hogtie." JFRD personnel then carried Mr. Davidson face down, holding him by his arms and legs. Mr. Davidson was carried in this fashion to either the living room or the front door where he was then placed on a stretcher and carried to the ambulance. Plaintiffs allege that, while JFRD personnel carried him. Mr. Davidson's mid-section was unsupported. Mr. Davidson was then transported by JFRD personnel to Shands Medical Center. A few minutes after arrival, Mr. Davidson was taken out of the JFRD restraint, was placed on his back. and was restrained by hospital personnel to the bed.

Later that day. Mr. Davidson informed the hospital staff that he was experiencing

---

the word "fighting," but elaborated on her usage. She explained that she meant he was resisting her, but clarified that he never hit or struck her.

2. The Court will later discuss the disputed allegations concerning the level of Mr. Davidson's resistance.

back pain. He was subsequently diagnosed with a large herniated disc in his lower back, and now suffers from permanent disability as a result.

## Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). When a moving party has discharged its burden, the nonmoving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the nonmovant, *Key West Harbour v. City of Key West,* 987 F.2d 723, 726 (11th Cir.1993), and resolve all reasonable doubts in that party's favor, *Spence v. Zimmerman,* 873 F.2d 256, 257 (11th Cir.1989).

■■■ Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). It must be emphasized that the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported summary judgement motion. Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## Analysis

### Section 1983 Claims

*Count I Against Individual Defendants*

Plaintiffs allege that Mr. Davidson's herniated disk and resulting disability were caused by JFRD personnel's putting a knee in Mr. Davidson's back while restraining him, using the hogtie technique, or carrying him while hogtied and without supporting his midsection. In Count I, Plaintiffs allege a section 1983 violation on the part of the individually named Defendants. In response, Defendants raise a claim of qualified immunity.

■■■ "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno,* 325 F.3d 1228, 1233 (11th Cir.2003) (quoting *Hope v. Pelzer,* 536 U.S. 730, 731, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). The Eleventh

Circuit has further elaborated on this standard and has held:

> [f]or qualified immunity to be surrendered, preexisting law must dictate, that is truly compel, (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.

*Lassiter v. Ala. A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir.1994) (en banc). Essentially, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). It is a plaintiff's burden to show that defendant's actions violated clearly established law. *Zeigler v. Jackson* 716 F.2d 847, 849 (11th Cir.1983). The Eleventh Circuit has pointed out that a plaintiff does not met his burden by merely stating a constitutional claim using the most general terms. *See Dartland,* 866 F.2d at 1323 (quoting *Azeez v. Fairman,* 795 F.2d 1296, 1301 (7th Cir.1986)).

In order to determine the applicability of qualified immunity, the Supreme Court has established a two-part inquiry. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, the Court must consider whether the plaintiff's allegations, taken as true, establish a constitutional violation. *Id.* Secondly, if such allegations do establish a constitutional violation, the Court must determine whether the right was clearly established. *Id.* at 202, 121 S.Ct. 2151.

■ In this case, the Complaint alleges that Defendants' actions violated Mr. Davidson's Fourth and Fourteenth Amendment rights. Although the Court agrees with Plaintiffs that under some circumstances Fourth Amendment protections could apply in the context of a government health care worker providing emergency medical care, the Court disagrees with Plaintiffs that the present circumstances result in such a finding.

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, ... in some way restrained the liberty of a citizen." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Here, while the evidence shows that Mr. Davidson physically resisted Defendants' efforts to diagnose and treat him, there is no evidence that Mr. Davidson was aware of, or was mentally present in, the situation. Instead, it seems that any "resistance" was merely a result of the diabetic episode of which Mr. Davidson was experiencing, and of which the emergency medical personnel was attempting to treat. The evidence before the Court establishes that Mr. Davidson was unable to communicate with or take direction from the medical personnel on the scene. Had Mr. Davidson been lucid and able to communicate a refusal of treatment, including the type of restraint used, and had in fact refused treatment such actions might properly fall under the Fourth Amendment. But under the facts of this case, the Fourth Amendment is inapplicable given the lack of refusal on Mr. Davidson's part.

■ Plaintiffs also assert that Defendants violated Mr. Davidson's Fourteenth Amendment substantive due process rights. A citizen's due process rights can be violated when a government official's actions are "arbitrary or conscious shocking in a constitutional sense." *Waddell v. Hendry County Sheriff's Office,* 329 F.3d 1300, 1305 (11th Cir.2003). The Supreme Court has explained that under certain circumstances deliberate indifference on the part of a government actor can rise to the conscience-shocking level. *County of Sacramento v. Lewis,* 523 U.S. 833, 849–50, 118 S.Ct. 1708, 140 L.Ed.2d 1043

(1998). But, the Supreme Court has also explained that there is a higher standard in instances when government actors are called upon to act " 'in haste, under pressure, and ... without the luxury of a second chance.' " *County of Sacramento v. Lewis,* 523 U.S. 833, 853, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). In such circumstance and in order to meet the required threshold, a plaintiff must establish a purpose to cause harm. *Id.* at 852, 118 S.Ct. 1708; *see also Purvis v. City of Orlando,* 273 F.Supp.2d 1321, 1327 (M.D.Fla.2003). Conduct which is grossly negligent, reckless, or deliberately indifferent fails to constitute a constitutional violation. *Lewis,* 523 U.S. at 854, 118 S.Ct. 1708.

■ Plaintiffs assert that there was no emergency need to transport Mr. Davidson to the hospital because JFRD personnel had administered dextrose and by the time Mr. Davidson arrived at the hospital he had improved. Similarly, Plaintiffs assert that Defendants "had completely finished treating" Mr. Davidson when they hogtied him. The fact that with the assistance of hindsight it would seem Defendants' treatment was effective at countering the diabetic episode, hindsight is not the lens through which the Court judges their behavior. Had the dextrose IV been ineffective and had Defendants not taken Mr. Davidson to the hospital, one could conjecture that Plaintiffs would be before the Court with a factually different section 1983 claim. Instead, it is clear that Defendants were in the Davidson home attempting to treat Mr. Davidson for over twenty minutes before they made the decision to restrain and transport him. This decision cannot be attacked based only on hindsight, which shows their treatment was effective.

Plaintiffs also stress the fact that there was no medical reason to hogtie Mr. Davidson, "as opposed to some other, less extreme method of restraint." (Doc. No. 111, pg.7) Again, assuming this is true, Plaintiffs are no closer to establishing a purpose to cause harm. A poor decision is not the same as an intent to harm. Plaintiffs also attempt to dismiss Defendants' assertion that they hogtied Mr. Davidson because they believed they could not maneuver a stretcher into the confines of the small mobile home bedroom. Plaintiffs put forth evidence showing that a stretcher could have been brought into the bedroom and used to transport Mr. Davidson from the bed to the ambulance. Assuming this evidence was properly before the Court, this still does not establish an intent to harm. At the most, it shows that Defendants were incorrect in sizing up the area needed to navigate the stretcher into the bedroom. To repeat, Defendants may have made a bad decision in retrospect with the luxury of hindsight and the knowledge of the serious consequences of their actions, but there is no evidence that they intended to harm Mr. Davidson.

Because Plaintiffs are unable to establish a constitutional violation. Defendants' Motion (Doc. No. 85) is **GRANTED** as to Count I, and Count I is **DISMISSED with prejudice**.

*Count II Against City*

In Count II, Plaintiffs assert a section 1983 claim against the City and allege:

> The failure of the City to provide any guidelines, operating orders, policies/procedures, or training to JFRD personnel regarding proper methods of handling or restraining mentally disoriented or non-compliant persons, including those with diabetic medical problems, amounted to gross negligence, recklessness, and callous and deliberate indifference to the safety and well-being of citizens of the city in violation of 42 U.S.C. § 1983 and the Fourth and Four-

teenth Amendments to the United States Constitution.

(Doc. No. 51, ¶ 36). Because the Court has found that there was no constitutional deprivation under the alleged facts, there can be no section 1983 municipal liability. Therefore, Defendant's Motion (Doc. No. 87) is **GRANTED** as to Count II, and Count II is **DISMISSED** with prejudice.

### Remaining State Law Claims

Plaintiffs' remaining claims are state law claims. Count III alleges willful or wanton conduct on the part of the individual Defendants. Count IV and V are brought against the City and allege liability based on negligence and respondent superior liability, respectively. Counts VI and VII are derivative loss of consortium claims. These state law claims are supplemental claims supported by Plaintiffs' section 1983 claims. Title 28, United States Code, Section 1367(c) provides that a court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." Upon due consideration, this Court finds that resolution of Plaintiffs' remaining claims are best resolved by the state court, and declines to exercise supplemental jurisdiction over the remaining state law claims. Therefore, Counts III–VII are **DISMISSED without prejudice.**

### *Conclusion*

All claims having been dismissed, the Clerk is directed to close the file. Additionally, all pending Motions, if any, are denied as moot.